IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CYD Internacional S.A.** | : | **CIVIL ACTION** |
| Santiago, Chile | : | |
| and | : | |
| **Exportadora Aqua Santa S.A.** | : | |
| Santiago, Chile | : | |
| and | : | |
| **Frutera San Fernando S.A.** | : | |
| Santiago, Chile | : | |
| and | : | |
| **Exportadora Sapel Ltda.** | : | |
| Santiago, Chile | : | |
| | : | |
| vs. | : | |
| | : | |
| **M/V GLORIOUS HARVEST** | : | NO. |
| her engines, boilers, bunkers, | : | |
| tackles, gear, winches, appurtenances, | : | |
| etc., *in rem*. | : | |
| and | : | |
| **NYK COOL AB** | : | |
| P.O. Box 4315 | : | |
| SE-102 67 Stockholm, Sweden | : | |
| and | : | |
| **Ajm Tanking Pte. Ltd.** | : | |
| 70 Shenton Way | : | |
| #04-03 Marina Hse | : | |
| Shentonway, Singapore | : | |
| and | : | |
| **Kama Hill Maritime Inc.** | : | |
| Katarinavagen 17 | : | |
| SE-116 45 Stockholm, Sweden | : | |

### COMPLAINT IN ADMIRALTY *IN REM AND IN PERSONAM*
**Parties**

1.   CYD Internacional S.A. ("CYD") is a corporation with an office and place of business located in Chile.

2.   Exportadora Aqua Santa S.A. ("Aqua Santa") is a corporation with an office and place of business located in Chile.

3.   Exportadora Sapel Ltda. ("Sapel") is a corporation with an office and place of business located in Chile.

4. Frutera San Fernando ("Frusan") is a corporation with an office and place of business located in Chile.

5. Plaintiffs are shippers and/or receivers/consignees of fruit who regularly import their products on board ocean vessels arriving in the ports of the United States.

6. Defendant, M/V GLORIOUS HARVEST, is a vessel operated as a common carrier of goods in ocean transportation and is now or will be during the pendency of this proceeding within the Eastern District of Pennsylvania.

7. At all material times, Ajm Tanking Pte. Ltd. ("Ajm"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V GLORIOUS HARVEST, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, Ajm also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which Ajm was to deliver the goods in the same good order at a designated place.

8. At all material times, Kama Hill Maritime, Inc. (hereinafter "Kama"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V GLORIOUS HARVEST, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, Kama also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which Kama was to deliver the goods in the same good order at a designated place.

9. At all material times, NYK Cool AB ("NYK"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of

business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V GLORIOUS HARVEST, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, NYK also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which NYK was to deliver the goods in the same good order at a designated place.

10. At all times material hereto, Defendants were and are now engaged in the business of common carriage and/or private carriage of merchandise by water for hire and owned, operated, managed, chartered, possessed and/or controlled various vessels, including the M/V GLORIOUS HARVEST, as common and/or private carriers of merchandise for hire.

11. The vessel owned and/or operated by the above defendants has used the ports of the Commonwealth of Pennsylvania discharged and loaded cargo therein, been supplied services and handled therein and is subject to service of process under the applicable rules of law in admiralty practice and the statutes of the Commonwealth of Pennsylvania.

12. Plaintiffs were the shippers, consignees or owners of the cargo described more further below, and bring this action on their own behalf and as agents and trustees on behalf of and for the interests of all parties who may be or become interested in said shipment, and cargo as their respective interests may ultimately appear, and plaintiff is duly entitled to maintain this action.

## Jurisdiction and Venue

13. Plaintiffs by and through their attorneys, Dugan, Brinkmann, Maginnis and Pace, hereby bring this suit against the defendants under the provisions of 28 U.S.C. §1333, as this is an admiralty and maritime claim within the meaning of Rule 9(h) and the supplemental Admiralty Rules of the Federal Rules of Civil Procedure. In addition, jurisdiction is invoked pursuant to 28

U.S.C. §1377 as this is an action arising under an Act of Congress regulating commerce, specifically, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §1300 *et seq.* and the Harder Act of 1893, 46 U.S.C. §§190-196.

14. Venue lies within the Eastern District of Pennsylvania under the provisions of 28 U.S.C. §1391.

## COUNT I

15. In or about January of 2010, in Valparaiso, Chile, 24,280 cases of fresh fruit consigned to CYD were delivered in good order and condition aboard the M/V GLORIOUS HARVEST for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

16. In or about January of 2010, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL1726020052 through NKLCVL1726020059 and NKLCVL1726020042 through NKLCVL1726020051 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

17. Thereafter, various goods were delivered by the above named defendants to CYD, whereupon it was discovered that CYD's goods were not in like good order and condition as when received aboard the M/V GLORIOUS HARVEST, but were instead damaged, deteriorated in value and unfit for sale or use.

18. The aforesaid damage and loss of CYD's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

19. By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, CYD has sustained damage and loss in an amount in excess of Four Hundred and Sixty-Two Thousand Dollars ($462,000.00).

20. The aforesaid damage and/or loss of CYD's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

    a. failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

    b. failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

    c. failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

    d. failing to use proper care under the circumstances;

    e. improperly taking bunkers during the actual time of discharge of the fruit and thereby contaminating the fruit; and

    f. other and further particulars which will be shown at the time of trial.

21. By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of CYD's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Four Hundred and Sixty-Two Thousand Dollars ($462,000.00).

22. Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by CYD.

23. All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, CYD prays that:

1. Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2. If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Four Hundred and Sixty-Two Thousand Dollars ($462,000.00).

3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V GLORIOUS HARVEST, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4. Judgment be entered on behalf of CYD and against the defendants plus interest and costs of this action.

5. CYD have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT II

24. Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 23 set forth above.

25. In or about January of 2010, in Valparaiso, Chile, 5,872 cases of fresh fruit consigned to Aqua Santa were delivered in good order and condition aboard the M/V GLORIOUS

HARVEST for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

      26.    In or about January of 2010, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL1726020017 and NKLCVL1726020018 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

      27.    Thereafter, various goods were delivered by the above named defendants to Aqua Santa, whereupon it was discovered that Aqua Santa's goods were not in like good order and condition as when received aboard the M/V GLORIOUS HARVEST, but were instead damaged, deteriorated in value and unfit for sale or use.

      28.    The aforesaid damage and loss of Aqua Santa's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

      29.    By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Aqua Santa has sustained damage and loss in an amount in excess of Eighty-Two Thousand Dollars ($82,000.00).

      30.    The aforesaid damage and/or loss of Aqua Santa's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

      a.    failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

      b.      failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

      c.      failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

      d.      failing to use proper care under the circumstances;

      e.      improperly taking bunkers during the actual time of discharge of the fruit and thereby contaminating the fruit; and

      f.      other and further particulars which will be shown at the time of trial.

31.      By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Aqua Santa's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Eighty-Two Thousand Dollars ($82,000.00).

32.      Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Aqua Santa.

33.      All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Aqua Santa prays that:

1.      Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.      If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Eighty-Two Thousand Dollars ($82,000.00).

3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V GLORIOUS HARVEST, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4. Judgment be entered on behalf of Aqua Santa and against the defendants plus interest and costs of this action.

5. Aqua Santa have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT III

34. Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 33 set forth above.

35. In or about January of 2010, in Valparaiso, Chile, 3,010 cases of fresh plums consigned to Frusan were delivered in good order and condition aboard the M/V GLORIOUS HARVEST for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

36. In or about January of 2010, the aforesaid shipments were loaded aboard said vessel and a clean on-board bill of lading numbered NKLCVL1726020031 was issued acknowledging receipt on the vessel of the said shipment in good order and condition.

37. Thereafter, various goods were delivered by the above named defendants to Frusan, whereupon it was discovered that Frusan's goods were not in like good order and condition as when received aboard the M/V GLORIOUS HARVEST, but were instead damaged, deteriorated in value and unfit for sale or use.

38. The aforesaid damage and loss of Frusan's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

39. By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Frusan has sustained damage and loss in an amount in excess of Seventy-Three Thousand Dollars ($73,000.00).

40. The aforesaid damage and/or loss of Frusan's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

    a. failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

    b. failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

    c. failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

    d. failing to use proper care under the circumstances;

    e. improperly taking bunkers during the actual time of discharge of the fruit and thereby contaminating the fruit; and

    f. other and further particulars which will be shown at the time of trial.

41. By reason of all of the above defendants' negligence and lack of due care and

the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Frusan's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Seventy-Three Thousand Dollars ($73,000.00).

  42. Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Frusan.

  43. All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

  WHEREFORE, Frusan prays that:

  1. Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

  2. If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Seventy-Three Thousand Dollars ($73,000.00).

  3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V GLORIOUS HARVEST, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

  4. Judgment be entered on behalf of Frusan and against the defendants plus interest and costs of this action.

  5. Frusan have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT IV

44. Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 43 set forth above.

45. In or about January of 2010, in Valparaiso, Chile, 4,601 cases of fruit consigned to Sapel were delivered in good order and condition aboard the M/V GLORIOUS HARVEST for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

46. In or about January of 2010, the aforesaid shipments were loaded aboard said vessel and a clean on-board bill of lading numbered NKLCVL1726020032 was issued acknowledging receipt on the vessel of the said shipment in good order and condition.

47. Thereafter, various goods were delivered by the above named defendants to Sapel, whereupon it was discovered that Sapel's goods were not in like good order and condition as when received aboard the M/V GLORIOUS HARVEST, but were instead damaged, deteriorated in value and unfit for sale or use.

48. The aforesaid damage and loss of Sapel's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

49. By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Sapel has sustained damage and loss in an amount in excess of Eighty-Seven Thousand Dollars ($87,000.00).

50. The aforesaid damage and/or loss of Geofrut's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

   a. failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

   b. failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

   c. failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

   d. failing to use proper care under the circumstances;

   e. improperly taking bunkers during the actual time of discharge of the fruit and thereby contaminating the fruit; and

   f. other and further particulars which will be shown at the time of trial.

51. By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Sapel's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Eighty-Seven Thousand Dollars ($87,000.00).

52. Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Sapel.

53. All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Sapel prays that:

1. Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2. If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Eighty-Seven Thousand Dollars ($87,000.00).

3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V GLORIOUS HARVEST, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4. Judgment be entered on behalf of Sapel and against the defendants plus interest and costs of this action.

5. Sapel have such other and further relief in the premises and in law and justice as it may be entitled to receive.

                                          DUGAN, BRINKMANN, MAGINNIS AND PACE

BY:       EM871
      Eugene J. Maginnis, Jr., Esquire
      1880 John F. Kennedy Boulevard
      Suite 1400
      Philadelphia, PA 19103
      (215) 563-3500
      ATTORNEY FOR PLAINTIFFS

Dated: January 11, 2011